FRANCES E. HURLEY, Appellant,

*vs.*

INHABITANTS OF SOUTH THOMASTON.

Knox.   Opinion March 31, 1909.

*Statutes.   Pari Materia.   Construction.   Ways.   Change in Grade.   Abutting Owners.
Damages.   Liability of Towns.   Street Railroads.   Liability to Towns for
Change in Grade.   Revised Statutes, chapter 1, section 6, rules II,
XIV; chapter 23, section 68; chapter 53, section 19.*

The language of a statute is generally extended to new things which were
not known and could not have been contemplated by the legislature when
it was passed.   This occurs when the act deals with a genus, and the thing
which afterwards comes into existence is a species of it.

It is a well established rule that all statutes relating to the same subject
matter though enacted at different times, are to be deemed in pari materia,
and construed with reference to each other.

Section 68, chapter 23, Revised Statutes, relating to ways, and section 19,
chapter 53, Revised Statutes, relating to street railroads, read as follows :

"Sec. 68.   When a way or street is raised or lowered by a road commissioner
or person authorized, to the injury of an owner of adjoining land, he may,
within a year, apply in writing to the municipal officers and they shall
view such way or street and assess the damages, if any have been occasioned
thereby, to be paid by the town, and any person aggreived by said assess-
ment, may have them determined, on complaint to the supreme judicial
court in the manner prescribed in section twenty of this chapter.   Said
complaint shall be filed at the term of the supreme judicial court, next to
be held within the county where the land is situated, after sixty days from
the date of assessment.

"Section 19.   Said railroad shall be constructed and maintained in such form
and manner, and with such rails and upon such grade as the municipal
officers of the cities and towns where the same are located may direct, and
whenever in the judgment of such corporation it shall be necessary to alter
the grade of any city, town or county road, said alterations shall be made
at the sole expense of said corporation with the assent and in accordance
with the directions of said municipal officers.   The said corporation may at
any time appeal from the decision of such municipal officers determining
the form and manner of the construction and maintainance of its railroad

and the kind of rail to be used, to the board of railroad commissioners who shall upon notice hear the parties and finally determine the questions raised by said appeal."

*Held:* 1. That these two sections are to be considered together as statutes in pari materia, and so construed that when the grade is established by the municipal officers at the request of the railroad company, by virtue of said section 19, it shall be deemed to have been done by a " person authorized " within the meaning of said section 68. In such a case all formal objections and verbal criticisms are obviated by the statutory rules of construction (R. S., chapter 1, section 6, rules XIV and II) under which the word " person " may include a corporation and words of the singular number include the plural.

2. That although said section 68 provides that the damages shall be assessed by the municipal officers " to be paid by the town," while said section 19 declares that "said alterations shall be made at the sole expense of said corporation with the assent and in accordance with the directions of the municipal officers," yet the word " expense " as used in said section 19 may include the damages to the landowners.

3. That damages assessed by the municipal officers under said section 68, if paid by the town, become a part of the " expense " of the alterations by virtue of said section 19, and are legally recoverable by the town against the railroad corporation.

Where, under the provisions of Revised Statutes, chapter 53, section 19, the grade of a street railroad located on the side of a town way was established and fixed by the municipal officers of the town and also, by authority of the municipal officers, the grade of the traveled side of the way was raised so as to conform to the grade of the street railroad and an abutting owner was damaged thereby, *held* that under the provisions of Revised Statutes, chapter 23, section 68, the town was liable for the damages sustained by the abutting owner.

On exceptions by defendants.    Overruled.

Appeal from the refusal of the selectmen of the defendant town to assess damages alleged to have been sustained by the plaintiff by reason of the raising of the highway in front of the plaintiff's premises, the proceeding being under Revised Statutes, chapter 23, section 68. The plaintiff recovered a verdict in the appellate court. During the trial the defendant town excepted to several rulings of the presiding Justice.

The case is stated in the opinion.

*David N. Mortland,* for plaintiff.

*Arthur S. Littlefield,* for defendants.

SITTING: EMERY, C. J., WHITEHOUSE, SPEAR, CORNISH, KING, BIRD, JJ.

WHITEHOUSE, J.    This is an appeal from the refusal of the select-men of the defendant town to assess the damages alleged to have been occasioned by the raising of the highway in front of the appellant's premises situated on the east side of the road in the defendant town, near the foot of Ingraham's Hill.    The proceeding is based upon section 68 of chapter 23, R. S., which provides that when a highway is "raised or lowered by a road commissioner or person authorized to the injury of an owner of adjoining land," he may have the damages assessed by the municipal officers "to be paid by the town," and "any person aggrieved by said assessment may have them determined on complaint to the supreme judicial court" in the manner therein prescribed.

The Rockland, South Thomaston & Owls Head Street Railway was located and built on the easterly side of the highway in front of the appellant's premises, and it appeared from the uncontradicted testimony of the president of the railway corporation that the "company had the grade of its road at that point established and fixed by the municipal officers of South Thomaston in accordance with section 19 of chapter 53 of the revised statutes."    The fill for the sub grade of the railway was made by the company in accordance with the direction of the selectmen, and the remainder of the highway on the traveled side was afterward graded in conformity therewith under the supervision of an agent employed by the selectmen. All of this grading was done before the call for the town meeting at which the following vote was passed, to wit:

"Voted on Article 2nd to instruct the Selectmen to confer and contract with the Rockland, South Thomaston & Owl's Head Street Railway to change and make uniform the grade of Ingraham's Hill with the railroad track, under the direction of the municipal officers, the material to be taken from said hill to be deposited, under the direction of the municipal officers, on the road to the southward of said hill, for a sum not to exceed $500, provided said Rockland,

South Thomaston & Owl's Head Railway will assume all damages, accruing, or which may accrue to the abutters on Ingraham's Hill."

The appeal was tried before a jury, and a verdict was returned in favor of the appellant. The case comes to the Law Court on the appellee's exceptions to the rulings of the presiding Justice.

Section 19 of chapter 53 of the Revised Statutes, above mentioned, provides that street railroads "shall be constructed and maintained in such form and manner and with such rails and upon such grade as the municipal officers . . . may direct, and whenever in the judgment of such corporation it shall be necessary to alter the grade of any city, town or county road, said alterations shall be made at the sole expense of said corporation with the assent and in accordance with the directions of said municipal officers." The remainder of the section provides for an appeal from their decision respecting the manner of construction and maintenance of the railroad and the kind of rail to be used, to the board of railroad commissioners.

At the trial the defendant contended that the town could not be held responsible in any way for the damages sustained by the appellant on account of the raising of the grade of the road, by virtue of the provisions of the foregoing section of chapter 53. Several subordinate questions of law were also raised at the trial and instructions requested by the defendant with respect to the legal location of the railway and the burden of proof relating to that branch of the case. But the counsel for the defendant in his argument before the Law Court expressly waives all the exceptions relating to these minor questions and confines his contentions principally to the fundamental proposition that upon the facts stated the appellant's complaint is not maintainable against the town, either upon the principles of the common law or the provisions of the statutes above quoted. He still contends, however, that if the town is liable at all, a distinction should be observed between the work of grading for the railway track and that done for the traveled portion of the way, and that if the railroad company raised the easterly portion of the way and the town voluntarily raised the remainder of it, it would in any event only be liable for the damages resulting from what it did.

It is argued in behalf of the defendant that by section 19 of chapter 53, the municipal officers are constituted a distinct judicial tribunal to establish the grade for street railroads, and that in performing that duty they do not act as a municipal agency in the interest of the town or as a "person authorized" within the meaning of section 68 of chapter 23 above quoted relating to highways. It is further argued that inasmuch as section 19 of chapter 53 declares that "such alterations shall be made at the sole expense of said corporation," and the word "expense" may properly be construed to include damages suffered by abutting owners, the legislature could not have intended that any action under the statute last named involving a change of grade for the benefit of a street railroad, should render the municipality liable to pay the damages resulting therefrom to abutting owners, either absolutely or in the first instance.

This question has never before been presented to this court, but notice may be taken of the fact that in every case that has arisen since the enactment of section 19 of chapter 53, R. S., in the year 1893, where a change of grade has been made by the municipal officers under this statute at the request of a street railroad corporation, the damages resulting to the owner of the adjoining land, unless adjusted by mutual agreement, have uniformly been assessed by the municipal officers under section 68 of chapter 23 or, if the owner was aggrieved, have been determined on complaint to the Supreme Judicial Court as therein prescribed, and in either event the damages awarded have been paid by the railroad corporation. The practical construction thus placed upon these statutes during a period of fifteen years of extensive street railway construction appears to have been satisfactory to all the parties interested, and is entitled to respectful consideration in the decision of the question. This practical construction was in effect adopted in the rulings and instructions of the presiding Justice in the case at bar.

It has been seen that section 68 of chapter 23 provides that when the grade is changed by a "road commissioner or person authorized," the abutter may have his damages assessed as there provided. The phrase "or person authorized" there found first appeared in the

revision of 1857, when there were no street railroads in this State, and it may be true that the power to fix the grade given to municipal officers by section 19 of chapter 53, was a particular species of authorization not actually present to the minds of the legislators in 1857.    But as stated in Endlich on the Interpretation of Statutes, section 112.    "The language of the statute is generally extended to new things which were not known and could not have been contemplated by the legislature when it was passed. This occurs when the act deals with a genus, and the thing which afterwards comes into existence is a species of it."    *Portland* v. *N. E. Tel. & Tel. Co.*, 103 Maine, 240.    It is a well established rule that all statutes relating to the same subject matter though enacted at different times, are to be deemed in pari materia, and construed with reference to each other.    "This rule" says Ch. J. Shaw in *Com.* v. *Goding*, 3 Met. 130, "is peculiarly applicable to the Revised Statutes in which  for the convenience of analysis, and classification of subjects,  provisions are sometimes widely separated from each other  in the code  which have so immediate a connection with each other, that it is quite necessary to consider the one in order to arrive at the true exposition of the other."    See also *State* v. *Frederickson*, 101 Maine, 37.

The two sections of the Revised Statutes in question the one relating to highways (sec. 68, chap. 23) and the other to street railways (sec. 19, chap. 53) may accordingly be considered together as statutes in pari materia, and so construed that when the grade is established by the municipal officers at the request of the railroad company, by virtue of the latter section of the statute, it shall be deemed to have been done by a "person authorized" within the meaning of the former section.    In such a case all formal objections and verbal criticisms are obviated by our statutory rules of construction (chap. 1, R. S.) under which the word "person" may include a corporation and words of the singular number include the plural.

In harmony with this view the presiding Justice instructed the jury that  .  .  .   "If the municipal officers of South Thomaston when the railroad went down there, did actually fix the grade of the road at that place, to which it was to be built up to that place, then

I say to you gentlemen, as a matter of law, that the raising of the road at that place was done by a person authorized; that is, the railroad had authority to do it by authority from the selectmen who by law were vested with power to give that authority."

"If the selectmen did it of their own accord, then the town would be liable, as the selectmen have authority to do those things of their own accord, irrespective of the railroad. If they didn't fix it, but the railroad without any authority, raised the grade, raised the street, then the defendant town wouldn't be liable for what the railroad did. Because the railroad in such a case wouldn't be a person authorized. The town in this form of action is liable only for the acts of a person authorized." . . . . . If the raising of the road anywhere, either upon the railroad side or upon the traveled side was done by authority of the selectmen of the town of South Thomaston, then it is a raising of the street within the meaning of this section."

Again it has been seen that section 68 of chapter 23, provides that the damages shall be assessed by the municipal officers "to be paid by the town," while section 19 of chapter 53 declares that "said alterations shall be made at the sole expense of said corporation with the assent and in accordance with the directions of said municipal officers." The word "expense" as used in this statute may include the damages to the landowners. *Brigham* v. *Worcester County*, 147 Mass. 446; *Damon* v. *Reading*, 2 Gray, 274. Thus construed together with respect to the question of payment, the two statutes are also easily reconciled by holding that the damages assessed by the municipal officers under the highway statute, if paid by the town, become a part of the "expense" of the alterations by virtue of the railroad statute, and legally recoverable by the town against the railroad corporation.

The charge of the presiding Justice was also in harmony with this construction, and no exceptionable error is disclosed.

The certificate must therefore be,

*Exceptions overruled.*